IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| BRIDGET BROWN | : | CIVIL ACTION |
|---|---|---|
| v. | : | No. 17-2653 |
| THE SCHOOL DISTRICT OF PHILADELPHIA, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                     **September 18, 2018**

Plaintiff Bridget Brown brings this employment discrimination action against her former employer, the School District of Philadelphia[1], alleging violations of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act (PHRA), 43 Pa. Stat. Ann. §§ 951-963. Brown alleges she was discriminated against and subjected to a hostile work environment because of her race. Defendants have moved for summary judgment on all counts of Brown's Complaint. Because there are no genuine disputes as to any material facts and because Defendants are entitled to judgment as a matter of law, Defendants' motion for summary judgment will be granted.[2]

---

[1] While Brown originally asserted claims against the School District employees Lori Paster, Rachel Holzman, and Jody Greenblatt in addition to the School District for violations of 42 U.S.C § 1981, 42 U.S.C § 1983, and Title VII retaliation, Brown has since abandoned those claims. *See* Pl.'s Reply in Opp'n to Defs.' Mot. for Summ. J. at 4 ("request[ing] that the Court allow her to proceed to trial on the racial discrimination (Count I under Title VII and Count V under the PHRA) and racially hostile work environment (Count I under Title VII and Count V under the PHRA) of her complaint against the corporate defendant the [School District of Philadelphia], only."). As a result, only Brown's discrimination and hostile work environment claims against the School District under Title VII and the PHRA will be addressed herein.

[2] In response to the School District's motion for summary judgment, Brown filed a motion to strike five statements in the School District's statement of undisputed material facts as inadmissible hearsay pursuant to Federal Rule of Civil Procedure 56(c)(2). *See* Pl.'s Mot. to Strike (seeking to strike the School District's undisputed facts No. 21, 22, 25, 35, and 50).

**BACKGROUND**[3]

Brown, an African-American female, was employed by the School District from September 2004 until her termination on February 24, 2017, except for a four-month period from June 2012 to October 2012 when she was temporarily laid off.[4] Brown Dep. 13. In April 2013, Brown was promoted to the position of Director of Prevention and Intervention for the School District. Around the end of 2013, Brown was temporarily promoted to the position of Acting Deputy of Prevention and Intervention, but she later voluntarily returned to the title of Director and remained in that position until she was terminated in February 2017. *Id.* at 19-24.

---

Under Rule 56(c)(2), a party may object to evidence set forth in a summary judgment motion on the ground it is inadmissible at trial. *See* Fed. R. Civ. P. 56(c)(2). In the Third Circuit, "hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial." *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 223 n.2 (3d Cir. 2000). In *Styer v. Frito-Lay*, for example, the court held it was proper to consider hearsay statements contained in a private investigator's affidavit because it appeared the declarant would be available at trial. *See* No. 13-833, 2015 WL 999122, at *2 (W.D. Pa. Mar. 6, 2015).

Here, Brown objects to the School District's undisputed facts No. 21, 22, 25, 35, and 50 because the witness did not testify to the exact phrasing the School District used in its statement. Like in *Styer*, however, Brown's argument fails because there is no evidence showing that the declarant of each statement would be unavailable to testify at trial. Because it appears that each witness is capable of testifying at trial, the alleged hearsay statements are "capable of admission." *Id.* Consequently, Brown's objections in her motion to strike are denied.

[3] In determining whether to grant summary judgment, the Court "must view the facts in the light most favorable to the non-moving party, and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[4] The School District asserts Brown was terminated effective February 24, 2017—the day Brown received her last payment from School District. *See* Defs.' Mot. Ex. 2 (February 21, 2017, letter from School District to Brown stating Brown's employment would be terminated "effective February 24, 2017"). Brown argues that because she met with supervisors on February 14, 2017, and thereafter left the school building at the School District's request, the "proper inference is that [she] was fired on February 14, 2017." Pl.'s Statement of Disputed Material Facts ¶ 3. Despite Brown's argument, Brown admitted at her deposition the School District paid her through February 24, 2017, which is consistent with the effective date on her termination letter. Brown Dep. 15.

2

As Director of Prevention and Intervention, Brown's duties included: (1) planning, directing, and supervising staff training regarding the provision of prevention, intervention, and behavioral health services; (2) overseeing and coordinating responses to student behavioral health emergencies; and (3) ensuring compliance with the State Department of Education's mandated Student Assistance Process (SAP). [5] *See* Defs.' Mot. Ex. 6.

In March 2016, the School District hired Lori Paster, a Caucasian female, to be the Deputy of Prevention and Intervention who became Brown's direct supervisor. Defs.' Mot. Ex. 3. Paster reported to Chief of the Office of Student Support Services Karyn Lynch, a Caucasian female. As part of her duties, Paster implemented a long-term goal of shifting its model of support services from a reactive, crisis-response model to a proactive, crisis-prevention model. Lynch Dep. II, 21-23.

Beginning in early September 2016, Brown received several emails from the Pennsylvania Department of Education notifying her that the School District's SAP training materials were past due. *See* Defs' Mot. Ex. 8, at SDP 829-33. For example, on September 12, 2016, Joseph Loccisano of the Department emailed Brown informing her that the School District's Commonwealth Approved Training Letter of Assurance was overdue. *Id.* at SDP 829. On November 9, 2016, after emailing Brown, the Department contacted Paster directly regarding the overdue materials. Defs.' Mot. Ex. 9, at SDP 834-37. On December 15, 2016, the Department having still not received the requisite SAP materials, Paster sent Brown an email

---

[5] Brown contends she was involuntarily demoted from her Director position when the School District "re-drafted her job description and dissolved her responsibilities into two weaker positions." Pl.'s Statement of Disputed Material Facts ¶ 9. Although Brown provides two job descriptions for the position of Director of Prevention and Intervention, with the second job description indicating a revision on "6/17," Brown fails to explain when these job descriptions were issued, or point to language "dissolving" her responsibilities, or otherwise altering her title or salary.

labeled "HIGH PRIORITY — TIME SENSITIVE," directing Brown to provide the Department with the School District's SAP training manual "now or tomorrow." Defs.' Mot. Ex. 10, at SDP 310. A week later, the Department still had not received the training manual.

On January 9, 2017, Paster directed Brown to assist in administering SAP training sessions. In response, Brown asserted she and her team were not involved in the day-to-day operations regarding scheduling and producing training materials for participants. Defs.' Mot. Ex. 13, at SDP 604. Brown suggested that Paster prepare and distribute flyers advertising the SAP training. She also refused to locate binders for SAP training materials, stating she was "not aware of the process to obtain them [and] therefore [un]able to assist." *Id.*

In light of these and other continuing deficiencies in Brown's performance, Paster created a 30-day Performance Improvement Plan (PIP) for Brown. The PIP was designed to "clarify performance expectations," "supplement . . . [her] job description," and "facilitate sustained improvement." Defs.' Mot. Ex. 14. On January 12, 2017, Paster forwarded the PIP to then-Deputy of Employee Relations Andrew Rosen for review. Defs.' Mot. Ex. 15, at SDP 847; Ex. 16, at SDP 883. Rosen promptly approved the PIP. The next day, Paster provided Brown with the PIP, notifying her of several shortcomings in her job performance, including failing to attend meetings, failing to provide accurate information through emails, failing to build relationships with coworkers, and failing to timely prepare and submit SAP materials. Defs.' Mot. Ex. 14. She also scheduled a January 26, 2017, meeting with Brown to review her performance and progress under the PIP, *id.*, and forwarded the PIP to Lynch, who knew Brown was having performance issues at the time. Lynch Dep. 19, 74-77; Defs.' Mot. Ex. 16.

On January 26, 2017, Paster emailed Brown to reschedule their PIP review meeting for the next day, and attached an updated PIP reflecting her continued concerns with Brown's

4

performance. The updated PIP noted Brown continued to fail to meet the expectations outlined in the PIP and her performance had not improved. *Id.* Paster also provided the updated PIP to Rosen. Defs.' Mot. Ex. 18. Although the review meeting was rescheduled for January 27, 2017, it was not held because Brown was out sick. Defs.' Mot. Ex. 17, Ex. 19. The meeting was rescheduled again for February 2, 2017. Defs.' Mot. Ex. 19.

In the meantime, on January 29, 2017, Paster emailed Brown's updated PIP to Lynch, stating, "As you can see [Brown] did not do well at all. [Rosen] says we probably have enough to term[inate] now, but to wait the 30 days stipulated in the PIP." Defs.' Mot. Ex. 18, at SDP 903. On February 2, 2017, Brown's rescheduled PIP review did not occur because Brown failed to attend. Pl.'s Mot. Ex. 3-B, at SDP 213. The meeting was rescheduled a third time for February 6, 2018.

On the morning of February 6, 2017, Paster emailed Brown a second updated PIP, which included additional concerns about Brown's performance. Defs.' Mot. Ex. 19. Paster requested that Brown review the PIP before their meeting. *Id.* Paster and Brown met later that day to review the updated PIP. Three days after the meeting, on February 9, 2017, Rosen drafted an Unsatisfactory Work Performance Memorandum and sent the draft to Paster for review and comment. Defs.' Mot. Ex. 22. The memorandum detailed Brown's continued performance issues and concluded, "[b]ased upon your overall work performance and failure to improve and/or address the issues set forth in the PIP, I am recommending your immediate termination." *Id.* The memorandum identified the following as specific areas of concern: (1) "failure to attend meetings as requested/scheduled"; (2) "failure to follow directives/failure to complete work"; (3) "failure to communicate/failure to communicate with accurate information/failure to respond to

communicate from deputy"; and (4) "interpersonal relationships/relationship building/appropriate participation in meetings." *Id.*

On February 13, 2017, Paster sent Rosen the final version of the memorandum. Paster also provided the memorandum to Lynch, stating she and Rosen would be meeting with Brown the following day regarding the memorandum. Defs.' Mot. Ex. 23, at SDP 971-78. On February 14, 2017, Rosen and Paster met with Brown and provided her with the memorandum. Defs.' Mot. Ex. 23. On February 21, 2017, the School District sent Brown a letter via certified mail stating she was terminated effective February 24, 2017. Defs.' Mot. Ex. 2.

During the time Brown was supervised by Paster, Paster often used animal names to refer to School District employees. Paster repeatedly referred to Brown as "snake." Pl.'s Mot. Ex. 4, at P110. For example, Paster would greet Brown by saying "[h]ello my little snake." *Id.* Paster also used animal names for individuals of different genders and races, including at least two white females, a Puerto Rican male, and another African-American female. Brown Dep. 53-56; Lynch Dep. 133-34. Paster would also refer "to herself as a lot of names." Brown Dep. 54; *see* Defs.' Mot. Ex. 24, at 827 (in an email to Brown, referring to herself as Brown's "mama llama"). During her deposition, Brown stated that Paster refrained from calling certain employees animal names after they asked her not to, including Tania Leonard, an African-American female. Brown Dep. 53-54.

After learning of Paster's conduct, Lynch brought the conduct to the attention of Rosen and conducted an investigation. Lynch Dep. 121-23. Paster later received written discipline and a warning not to repeat the behavior. *Id.* at 123-24; Defs.' Mot. Ex. 25, at 147. Lynch's

investigation concluded that Paster's conduct was not racially motivated.[6] Pl.'s Mot. Ex. 1. Since administering the written warning, Lynch has received no further complaints regarding Paster's behavior. Lynch Dep. 137-38.

Following her termination, Brown filed a charge of discrimination with the Equal Employment Opportunity Commission on February 21, 2017, received her notice of right to bring suit on May 10, 2017, and filed the instant Complaint on June 13, 2017. Compl. Ex. A. On August 14, 2017, Defendants' filed their Answer with the Court. On January 4, 2018, Defendants filed the instant motion for summary judgment, to which the Brown responded on January 18, 2018. The Court head oral argument on the motion on March 9, 2018. For the reasons set forth below, the Court will grant Defendants' motion for summary judgment and enter judgment in favor of Defendants on all claims.

**DISCUSSION**

A motion for summary judgment shall be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408

---

[6] In her motion to strike, Brown objects to Lynch's conclusion because it is an inadmissible expert opinion under Federal Rule of Evidence 702. Brown's argument fails because Lynch's opinion is rationally based on her perception after her investigation of Paster's misconduct and admissible as a lay opinion under Federal Rule of Evidence 701. *Acosta v. Cent. Laundry, Inc.*, 273 F. Supp. 3d 553, 557 (E.D. Pa. 2017) (admitting the testimony of a wage investigator as lay testimony under Rule 701 where he developed an opinion after conducting an investigation). Therefore, Brown's objection in her motion to strike is denied.

(E.D. Pa. 2000) (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

First, Brown claims she was discriminated against because of her race in violation of Title VII and the PHRA.[7] In support, Brown initially contends Paster's use of the name "snake" in reference to Brown is direct evidence of racial discrimination because Paster received a written warning for this "inappropriate" conduct, *see* Pl.'s Resp. Ex. 1 (Unsatisfactory Incident Report), and the School District Employee Handbook prohibits such conduct.[8] The Court disagrees as the animal names Paster called Brown, like snake, do not appear to have any racial connotations and thus they do not directly reflect discriminatory animus towards Brown. *See Sunkett v. Misci*, 183 F. Supp. 2d 691, 707-08 (D.N.J. 2002) (stating "direct evidence is a statement by Employer X, "I am firing Employee Z because she is black . . . .").

As Brown has no direct evidence of discrimination, the "*McDonnell Douglas* burden shifting analysis applies to [her] claims of discrimination under Title VII." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, Brown bears the initial burden of establishing a prima facie case of discrimination. *Id.*. If she establishes a prima facie case of discrimination, the burden

---

[7] Title VII and the PHRA both prohibit employment discrimination based on an employee's race. *See Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1084 (3d Cir. 1995). Because PHRA claims are construed analyzed under the same framework as Title VII claims, the Court will only refer to Brown's Title VII claims in this analysis.

[8] The School District Employee Handbook provides that racist slurs are "offensive and unacceptable employee behavior" and "[l]anguage that relates to race . . . in a profane or joking way shall not be used in any job-related situation." Pl.'s Resp. Ex. 2, at 77, 79.

shifts to the School District, which must articulate a legitimate, nondiscriminatory reason for her termination. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). If the School District meets this burden, it has successfully rebutted the presumption of discriminatory action created by the prima facie case and Brown must show the articulated reasons were a pretext for discrimination and not the actual motivation for her termination. *Id.*

To establish a prima facie case of discrimination under Title VII, Brown must demonstrate (1) she is a member of a protected class, (2) she is qualified for her position, (3) she suffered an adverse employment action, and (4) the circumstances surrounding the adverse action give rise to an inference of unlawful discrimination.[9] *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). The burden of establishing a prima facie case is not meant to be onerous, as its purpose is simply "to eliminate the most obvious, lawful reasons for the defendant's action." *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999). Nonetheless, a plaintiff must present evidence of each element in order to obtain relief. *Keller v. Orix Credit All., Inc.,* 130 F.3d 1101, 1108 (3d Cir. 1997).

Here, Brown cannot establish a prima facie case because she has not presented evidence from which a jury could reasonably find the circumstances surrounding her termination give rise to an inference of unlawful discrimination. As the Third Circuit noted in *Sarullo*: "[t]he central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their . . . [protected characteristic]." 352 F.3d at 798 (citation and internal quotation marks omitted). A plaintiff's subjective belief that race played a role in an employment decision is not sufficient by itself to establish an inference of discrimination. *See, e.g.*, *Jones v. United Parcel Service*, 214 F.3d 402, 407 (3d Cir. 2000).

---

[9] For the purposes of summary judgment, the first three elements of Brown's prima facie case are not in dispute.

In this instance, the only evidence Brown provided to support her claim that her termination was racially motivated is Paster's use of animal names when referring to other employees. However, a reasonable jury could not find this conduct was racially motivated because the record demonstrates that Paster used animal names indiscriminately to refer to individuals of different genders and races, including at least two white females, a Puerto Rican male, and another African-American female. Lynch Dep. 53-54. Paster also frequently used animal names to refer to herself. *Id.* at 54; Defs.' Mot. Ex. 24, at SDP 827.

Moreover, during her deposition, Brown admitted that Paster refrained from calling certain employees animal names after they asked her not to, including Tania Leonard, an African-American female. Brown Dep. 53-54. Although the School District determined Paster's conduct was "inappropriate," the only evidence suggesting Paster's use of animal names was racially motivated is Paster's own subjective belief, which is insufficient to establish an inference of discrimination.[10] *See Roberts v. Planned Bldg. Servs.*, No. 08-0968, 2009 WL 367542, at * 4 (E.D. Pa. Feb. 23, 2009) (granting summary judgment because the plaintiff's assertion that his supervisor "used the term 'animals' in referencing African Americans" was insufficient to establish that the plaintiff's race was a deciding factor in his termination); *cf. Webb v. Merck &*

---

[10] Brown also argues discriminatory animus can be inferred based upon the School District's treatment of two alleged comparators: Paster and Megan Ellow, a Caucasian employee who went undisciplined "by her white supervisor." Pl.'s Mem. 7. Although a plaintiff may demonstrate an inference of discriminatory intent by showing that similarly-situated persons outside the protected class were treated more favorably, the comparators must actually be similarly situated. *See Crumpton v. Potter*, 305 F. Supp. 2d 465, 472 (E.D. Pa. 2004) (stating the plaintiff must show "other employees' acts were of comparable seriousness to his own infraction"). The factors considered include whether the employees "dealt with the same supervisor, were subject to the same standards, and engaged in conduct of comparable seriousness to his own conduct without such differentiating or mitigating circumstances that would distinguish the employer's treatment of it." *Hobson v. St. Lukes Hosp. & Health Network*, 735 F. Supp. 2d 206, 214 (E.D. Pa. 2010). Brown's asserted comparators fail as a matter of law because (1) Paster did not supervise Ellow, (2) Paster could not supervise herself, and (3) there is no evidence Paster or Ellow were retained by the School District after failing to improve pursuant to a PIP.

*Co., Inc.*, 450 F. Supp. 2d 582, 597 (E.D. Pa. 2006) (holding a reasonable jury could find discriminatory animus where the supervisor referred to his *exclusively* African-American team as "my animals" and called himself the "zookeeper").

Even assuming Brown set forth a *prima facie* case, the School District has articulated numerous, legitimate, non-discriminatory reasons for terminating Brown. Mainly, Brown failed to comply with her job duties as Director of Prevention and Intervention and did not improve her performance after Paster and Rosen placed her on a PIP. Defs.' Mot. Exs. 2, 7, 19, and 23. Although Brown disagrees with the School District's articulated legitimate reasons for her termination, Brown has not produced sufficient evidence to refute the School District's explanation. Nor is there any evidence in the record from which a reasonable factfinder could infer the School District's proffered reasons for terminating Brown were pretext for discrimination because the only evidence suggesting a racial motivation for the School District's actions is Brown's subjective belief. Accordingly, Brown's race-based Title VII and PHRA claims fail as a matter of law.

Second, Brown asserts Paster's use of the name "snake" to refer to Brown created a racially hostile work environment. Under Title VII, racial discrimination is actionable when discriminatory behavior is so severe or pervasive it alters the terms and conditions of a plaintiff's employment. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64-65 (2006). To succeed on her hostile work environment claim, Brown must prove (1) she suffered intentional discrimination because of her race; (2) the discrimination she suffered was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same race in the same position; and (5) the existence of

*respondeat superior* liability. *Davis v. City of Newark*, 285 F. App'x 899, 902 (3d Cir. 2008) (citing *Weston v. Pennsylvania*, 251 F.3d 420, 425–26 (3d Cir. 2001)).

In this instance, Brown cannot show she suffered intentional discrimination because of her race. Under Title VII, even if there is severe or pervasive behavior, a plaintiff cannot succeed if the reason for the harassment is not based upon race. *Davis*, 285 F. App'x at 902. "While it is not necessary for a Title VII defendant to use words that overtly implicate racial animus to create a hostile work environment, comments that cannot be reasonably construed as invoking any racial feeling do not support Title VII liability." *Id.* As addressed above, Paster addressed not only Brown but also individuals of different genders and races by animal names. Furthermore, Paster stopped calling employees by animal names when asked. Although Brown subjectively believes Paster's use of the word "snake" was racially motivated, the objective circumstances do not support her own conclusory and self-serving statements. *See id.* at 903 (affirming the grant of defendant's motion to dismiss where the alleged harassing behavior was linked to "personality, temperament, and . . . other factors that tend to cause favor or disfavor between co-workers rather than racial issues"). Because she fails to establish racially-motivated harassing behavior, Brown cannot establish a hostile work environment claim.

**CONCLUSION**

For the reasons set forth above, the Court will grant Defendants' motion for summary judgment and enter judgment in favor of Defendants on all counts.

An appropriate order follows.

                                                BY THE COURT:

                                                /s/ Juan R. Sánchez
                                                Juan R. Sánchez, C.J.